IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, September 6, 2007

## PEGGY J. COLEMAN v. DAYSTAR ENERGY, INC.

**Direct Appeal from the Circuit Court for Blount County**
**No. L-15191     Hon. Jon Kerry Blackwood, Senior Judge**

No. E2007-00226-COA-R3-CV  - FI LED NOVEMBER 19, 2007

In this breach of construction contract suit, the Trial Court gave judgment in favor of plaintiff homeowner, and contractor defendant has appealed.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Chris Ralls, Maryville, Tennessee, for appellant.

John T. McArthur, Maryville, Tennessee, for appellee.

**OPINION**

This action for a breach of construction contract originated in the Sessions Court by the plaintiff homeowner, and the defendant construction company filed a counter-complaint. On trial in that Court, the Sessions Judge awarded the plaintiff $2,000.00 in damages, and ordered the lien that defendant had filed on plaintiff's property released.  Defendant's claim was dismissed.

Defendant filed an appeal to the Circuit Court, and the matter was tried before the Judge, who dismissed defendant's claim and awarded plaintiff $2,986.00.  The Circuit Court's findings were as follows:

1.     The parties entered into an oral contract for the defendant to replace several

skylights at the plaintiff's residence. The contract price was $5757.00;

2.      The defendant commenced work in late July 2004;

3.      After installing two skylights over the main portion of the house, the defendant commenced the replacement of the skylights over the sunroom;

4.      It was determined by the parties that there was extensive water damage to those lights and that more work would be necessary. Therefore, the parties entered into a written contract for the work to be performed on these skylights. The contract price was $7692.00;

5.      After the work began, plaintiff brought several complaints to the attention of the defendant. The first complaint dealt with one skylight over the main house. The light was crooked. This complaint was never addressed;

6.      A leak developed after a skylight was placed over the sunroom;

7.      Throughout the remainder of the construction, plaintiff pointed out complaints to the defendant regarding the construction. These complaints were not addressed.

8.      After construction, the plaintiff refused to pay the final draw due the defendant;

9.      The defendant placed a lien on plaintiff's home for the balance due;

10.     The Court finds that the construction contained various defects to wit:
        (A)     Gaps in sheet metal;
        (B)     Shingles were not feathered;
        (C)     At the edge of the skylight, shingles were mismatched;
        (D)     Openings in the work allowed the weather and outside elements to enter the house.

11.     Plaintiff hired several individuals to repair these defects;

12.     The Court finds that the cost of these repairs was $2986.00; and

13.     The Court finds that the defendant breached the contract and that defendant is not entitled to the final payment of $1208.00.[1]

_____

[1] This figure appears to be a typographical error in the trial court's Findings & Judgment. Both parties agree that the amount owed on the contract was $2,108.00. The amount is not material

Defendant's issues on appeal are:

1.      Whether the plaintiff proved the damages awarded by the Trial Court?

2.      Whether the Trial Court correctly computed the damages under the correct standard?

3.      Whether plaintiff failed to allow defendant to cure the breach of contract?

A trial court's findings of fact in a non-jury case is reviewed *de novo* upon the record. The trial court is afforded a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13 (d).  We review credibility determinations made by the trial court with great deference. *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995).  The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Union Carbide Corp.* 854 S.W.2d 87, 91 (Tenn. 1993).  The standard to apply when measuring damages is a question of law, and the determination of the amount of damages is a question of fact.  *Hopper v. Moling,* No. W2004-02410-COA-R3-CV, 2005 WL 2077650 at *7, (Tenn. Ct. App. Aug. 26, 2005) (citing *Beaty v. McGraw*, 15 S.W. 3d 819,827 (Tenn. Ct. App. 1998).

The defendant does not appeal the finding of the Trial Court that it breached the Contract, and we will consider the first and second issues together.

The Trial Court awarded plaintiff damages of two thousand nine hundred and eighty-six dollars ($2986.00) based upon what she paid to have the defects caused by defendant repaired. This is the appropriate method to determine damages under the circumstances of this case.  The Court, in *Hopper***,** discussed the proper measure of damages for defects or omissions in the performance of a construction contract as follows:

> As a general rule, the measure of damages for defects and omissions in the performance of a construction contract is the reasonable cost of the required repairs. This is especially true when the structure involved is the owner's home.  However, in the event that the cost of repairs is disproportionate when compared with the difference in value of the structure actually constructed and the one contracted for, the diminution value may be used instead as a measure of damages. However, this rule is applicable only when proof has been offered on both factors. . . .  We hold that the plaintiffs do not have the burden of offering alternative measures of damages. The burden is on the defendant to show that the cost of repairs is unreasonable when compared to the diminution of value due to the defects and omissions . . . .

*Hopper*, at *11; *see also GSB Contractors, Inc. v. Hess,* 179 S.W. 3d 535, 543 (Tenn. Ct. App.

_____

to the analysis here.

2005). Defendant offered no evidence that the cost of repair was unreasonable. Thus, the Trial Court correctly applied the general rule when calculating the amount of damages. Defendant argues in *Harley v. Harrison*, No. M-2005-02099-COA-R3-CV, 2006 WL 2644372 at * 3 (Tenn. Ct. App. Sept. 13, 2006) that the proper measure is the difference between the contract price and the cost of finishing the work. The *Harley* Court stated that "[w]hen a contractor fails to perform a contract for construction or fails to complete the project, then the measure of damages sustained by the owner is the difference between the contract price and the cost of finishing the work according to the contract." *Harley* at *3. The *Harley* Court did not discuss the general rule set forth in *Hopper*, and *GSB Contractors*. The rule of damages awarded based upon repair costs, as applied in *Hopper* and *GSB*, is well established. *See Nutzell v. Godwin,* 1989 WL 76306 (Tenn. Ct. App. July 13, 1989); *Estate of Jessee v. White*, 633 S.W. 2d 767 (Tenn. App. 1982); *Edenfield v. Woodlawn Manor, Inc.*, 462 S.W. 2d 237 (1970); *Wayne's Construct., Inc. v. Jones*, No. E2006-00535-COA-R3CV, 2007 WL 1670298 at *10 (Tenn. Ct. App. June 11, 2007).

Next, defendant argues that plaintiff did not prove her loss. The only witnesses at trial were the plaintiff and Tom Pope, president of defendant.

Plaintiff testified at length regarding the workmanship on the part of defendant, and the resulting defects in the project. She explained that in order to repair the damage defendant did to her house she had to hire several workers and she testified as to the amount she paid those workers. Pope testified that the work defendant performed was acceptable and the house was not made defective as a result of its work. The determination of the amount of damages is a question of fact and the Trial Court clearly believed plaintiff as to the damage to the house and the amount of money spent to repair some of the damage. Defendant also argues that the photographs produced by plaintiff were taken in May 2005, after repair work was finished, and that the photographs show defects which were not repaired. Again, the Trial Court accepted plaintiff's testimony that she could not afford to have the entire project torn out and redone so she focused on repairing the worst defects left by defendant.

Defendant further contends that the award of damages was contrary to the evidence presented. Plaintiff testified she paid one thousand five hundred dollars ($1,500.00) to one repair man, and one thousand dollars ($1,000.00) for the other repair man. She also stated she paid an electrician nine hundred and eighty-one dollars ($981.00) for the electrical work defendant had agreed to perform but did not. The total evidence presented by plaintiff three thousand four hundred and eighty-one dollars ($3,481.00). The Trial Court did not include a break down of his assessment of the costs of repair. The evidence does not preponderate against the factual determination made by the Trial Court as to the proper assessment of damages. Tenn. R. App. P. 13(d).

Finally, defendant claims that plaintiff should be barred from any recovery because she failed to give defendant notice and the opportunity to cure the defects in its workmanship. *Cf. (citing, Custom Built Homes by Ed Harris v. McNamara*, No. M2004-02703-COA-R3-CV, 2006 WL 3613583 at *5 (Tenn. Ct. App. Dec. 11, 2006). Here the Trial Court found that plaintiff repeatedly complained to defendant throughout the construction. Plaintiff testified that she complained

repeatedly to Mr. Pope regarding the poor quality of work and that she gave him the opportunity to correct the defects many times. Pope testified that he was not aware there was any dispute over the quality of his company's work, but again, the Trial Court believed the plaintiff's testimony on this issue. We find this issue to be without merit.

The judgment of the Trial Court is affirmed and the cause is remanded with the cost of the appeal assessed to the defendant, Daystar Energy, Inc.

_____
HERSCHEL PICKENS FRANKS, P.J.